Good morning, my name is Joe Nixon, I'm here on behalf of the foundation and I'll reserve five minutes for rebuttal. The NVRA contains broad and powerful public information rights. Your decision in this case will have an impact not only on the NVRA, but all public disclosure statutes in determining who, if anyone, has the right to make claims for public documents. This court in Wilderness Society foretold your answers to the standing questions you asked us a few weeks ago in recognizing a distinction between informational injuries, which this is, and procedural injuries, which this is not. Thankfully, the Supreme Court in Aiken Public Citizen and even Havens Realty leads us to the same conclusion you reached in Wilderness Society. Even TransUnion agrees with this court that there is a difference in Article III standing between informational and procedural injuries. Finally, this court definitively answered the preemption question earlier this year in Mi Familia Vota. This case is ripe because Mr. Nago refused the foundation's request under the NVRA for the statewide voter file, a document- That part, that claim, which is that, I think your claim is that Mr. Nago had to give the information. He couldn't delegate that to the counties. That's correct. Why isn't that claim a procedural claim in the context of an informational request? More like the case, I think Animal Legal Defense, where there was the reading room requirement. We did find standing there, but in part because plaintiffs showed injury from the procedural violations in the form of delay and added expense. The NVRA is the document, it's almost a strict liability statute, the purpose of which is for election integrity and to maintain current and accurate voter rolls. The voter roll is such a document, so Mr. Nago has it. He's required to have it under Help America Vote Act. He has that document, we asked for it, and he didn't give it to us. That is the injury. We don't have to go beyond that at all. It's not Mr. Nago, and me Familia Vota is very clear on this. The State of Hawaii cannot impose hurdles that interfere with people's rights under the NVRA. We have a lot to unpack here because it's a complicated case. I appreciate your introduction, which was very helpful. Going back to the standing argument, and we're navigating that reference in TransUnion, which you referenced, that the Sunshine cases may be different, but then the question is, isn't this more akin to a procedural violation under Spokio because you weren't actually denied access to the information, but just because you didn't receive from your desired party, as opposed to, say, the county folks? Right. It's not procedural. This is information. We don't have the information. Judge McCowan, you answered this question perfectly when you wrote Wilderness Society. You foretold us the answer. What you wrote is, society, of course, had a procedural injury in Wilderness Society, and then you said, the difficulty with the society's analysis is that it simply reframes every procedural deprivation in terms of an informational loss. This approach would allow and run around the Supreme Court, right? Okay, so we can't change procedural into informational for standing purposes, then states can't change informational into procedural in order to defeat standing of requesters. This case is very much like TransUnion. Of course, TransUnion was an organization as well, excuse me, public citizen. Anyone where the Supreme Court wrote, anyone whose request for specific information has been denied, that has been denied, has standing to bring the action, the requester's circumstances, why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose are irrelevant to his standing. So Hawaii has a statute that says that you've got to go to the counties, okay? So that's completely in contradiction to the NVRA. And just on the delegation claim, I want you to be very specific, exactly what statutory provision are you saying prohibits the delegation? Yes, it is the NVRA 52 U.S.C. 20510B, 20507I1. So each state shall maintain for two years and shall make available for public inspection and where available photocopying at a reasonable cost all records concerning implementation of programs and activities conducted for the purpose of ensuring accurate and currency of official list of eligible voters. That's the statute that gives us the right. You're saying that's the statute that prohibits the state from delegating to the counties? Yes. Well, let me read it. Any other provision? Yes. Yes. It's 52 U.S.C. 20510B. A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the state. So if you combine that with HAVA, HAVA requires each state to maintain in a uniform and non-discriminatory manner a single uniform official centralized interactive computerized statewide voter registration list. That's the document we asked for. So those are the universe of provisions you're relying on for the proposition that the state cannot delegate this duty to respond to requests under the 2103. Right. It's a mouthful. Right. So it's nothing expressly that says state cannot delegate. You're reading that as an implication of these three provisions. Is that correct? That's correct. That's correct. The state can't because a delegation serves as a hurdle. And just as this court in Mi Familia Vota says, with Arizona wanted to have a little more information when people register to vote, anything that serves as a hurdle to the NVRA has been preempted. It's preempted under the Elections Clause. And I just want to be clear on the facts. There's no evidence or allegation in the record that you actually did comply with the state rules for how to get the information from the counties. Is that correct?  So what's in the record is that we went to the counties. The counties gave us the forms. The forms are in the record. We did not fill out the forms because we did not comply. The other part of our lawsuit is that the delegation to the counties. So we don't know what would have happened if you had filled out those forms and followed the state rules. Is that correct? Well, pursuant to Hawaii statute, we would not have gotten them. We don't know that for sure yet, though. On this record. The Hawaii statute says it has to be election or government purposes. Election is defined in the statute as being for or against a candidate or a proposition. We're a 501c3. We don't comply with election or government purposes. We could not have ever received those from the county. And let me... Sorry, can I... We've gone to the merits and we moved... I just want to make sure I understand. So we've been talking about the merits of your delegation argument, but I think your answer to Judge Sung's first question, which was an interesting question, was that you don't think you need to go into these delegation issues for standing because you think just the denial of your request alone gives you standing? Under the NVRA. We didn't sue under Hawaii statute. We sued under the NVRA. And if you recall, the trial court was very clear and specific how we met statutory standing. We would urge a court that that's the only... I'm not worried about statutory standing right now. I'm wondering about Article III standing. Right. Well, I think the statutory and Article III are synonymous in this case. We don't have to go to the counties. We don't because that's not what the NVRA requires of us. We ask the election official who has the record for the record, and he denied it. We gave 90 days notice to cure, and he didn't provide it. That's the only standing that we are required to obtain. So, standing is claim specific. You agree? Under... I'll just represent. Standing is claim specific. So for your delegation claim, do you allege any injury caused by the fact of delegation other than the fact that you didn't get the information you wanted at the time from the source that you wanted? Yes. How does the change in source, specifically in your complaint or in your response in motion to dismiss, what is the injury, the harm that you rely on for standing? We don't have the statewide voter file. So it's just not having the information that you wanted? It's not just the information. It's the statewide voter file. So we get from the counties, whatever the counties, the counties don't have a statewide voter file. We don't know that because you didn't ask them, right? No, we do know that. Mr. Nagle said the counties only have the countywide files. Counties don't have, and he admitted that only he has a statewide voter file. If you got one from all the counties, you would have it? We don't know that. So you haven't applied and got... Let's say we had gone to all the counties. Voter files, you know, are fluid, so we get them from all the counties. Now each clerk has a discretion to say no, and of course we don't comply with the Hawaii statutes because we don't fit either purpose. But assume we got them all, we wouldn't know whether we had a statewide voter file until we compared it to the statewide voter file. We don't know if the four parts equal the whole, and we wouldn't know that until we see the whole. But the whole is what we asked for. Had we asked for, and I agree, had we asked for each county's portion, we should have gone to the counties. But we didn't ask for that. We asked for the whole. The whole is what we're entitled under the NVRA to see. I want to ask you then about the interpretation of the NVRA. Because what you want, and it's pretty clear what you want, you want a statewide voter file. Yes.  And the statewide voter file includes all kinds of information. That's correct. And you want all of that information. Well, we don't want Social Security numbers. You don't want Social Security numbers. But you want the birth date and the party registration and all the other things that are contained, right? That's correct.  So now we have, Hawaii has this. But my question then under the statute is it talks about that you can get this information which relates to the implementation of a program. And then it talks about under 8 i1 of the NVRA. So the question I have is how is the statewide voter file, which kind of stands over here, how does that relate to the implementation of one of the programs to make sure that things are being done properly? It's correct. So that's the foundation versus Bellows in the First Circuit. Your sister court in the First Circuit said in every other case we've provided a list. There's probably half a dozen, seven, maybe more cases that have concerted the specific issue of whether the statewide voter file is defined under the NVRA. And they all said yes. When you look at the purpose of the NVRA, one of the four purposes is to ensure that accurate and current voter registration roles are maintained. So it is, all the courts who have ever considered that question have held that the statewide voter file is an NVRA covered document. So if it were determined that the statute is interpreted such that the implementation of various programs to ensure accuracy is not the same as having the file itself, then you could go to the counties and hope for a composite file. Are there any other avenues that you could take? Well, we, our organization, obtain statewide voter files. We look at them. We identify everyone has mistakes. Some have lost more than others. My specific question is, if it were determined that this statute has some constraints in terms of what is covered because it talks about implementation of programs, not about maintenance of files, if that were determined, are there other avenues you could take under federal or state law to obtain a statewide voter registration list? No. No. We pursued our action under the federal. This is a situation Congress decided for us. And Congress made it a clear strict liability statute. This case is really about the right to know versus the need to know. And what I'd urge the court not to do, and this is why I said this decision has an impact on all government information statutes, because those statutes that are written in a manner that give the public the right to know, you know, there isn't, I urge this court not to make a public policy change into some kind of need to know. And the preemption issue with regard to Mi Familia Vota, which this court decided to maintain that decision and not hear it en banc again, is very specific. Any impediment of a state in relation to the NVRA is preempted. The delegation to counties, does the county clerks have discretion? We have one county might give us something, another county might say no. Who knows what we'd get at the end of the day? Sorry, you're over your time and I want to ask another question about standing. So your standing theory is that this informational injury that you're just talking about, this public right to information was denied. Does it matter that you're an organization instead of a single person? Like do you need to meet the Havens test on top of just this injury from information because you're an organization? No, we do not. We think the words of public citizen are definitive. Why you need it, who you are, what you're going to do with it is not relevant for the government to ask. Now, careful lawyers as we are, we pled it in paragraph three of our complaint and identified downstream consequences in paragraphs 55 to 63 of our complaint. Careful, but we don't believe it's necessary. And obviously in a lot of these cases we have individual members of an organization and that forms the foundation for standing. That's true. So you are... You're not suing on behalf of individuals but only the organization. We are a legal person. Right, I understand that. But, and you're basically saying that this affects the course of your doing business as an organization. That's correct. We are a legal person. We asked for the documents. We were aggrieved. We sued. I will reserve whatever time I have. We'll give you some time for a rebuttal. Let's plan on three minutes for a rebuttal, but let's hear from the other side. Thank you, Judge. Good morning, Your Honors. Aaron Shulainer on behalf of Defendant Appellee Scott Nago. It's a little hard to hear you. Can you move the microphone closer? A little better? No. We'll see. Okay. This case results from Plaintiff Appellant's apparent rush to get to the familiar ground of the debate, which has occurred in other circuits which they've mentioned, over how to interpret 52 U.S.C. 20507I relating to what are records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. Till for the Foundation apparently sees the voter registration list itself being covered by 52 U.S.C. section 20507. In contrast, as has been debated in other circuits, election administrators typically argue that these programs and activities in 52 U.S.C. 20507I relate to the language of 52 U.S.C. 20507A4 that references a general program that makes a reasonable effort to remove those due to death or a change of residence in accordance with the explicit language of 52 U.S.C. section 20507C-E that provides a permissible program that relies on change of address information supplied by the United States Postal System involving a subsequent mailing of a notice by forwardable mail to the voter in the passage of two election cycles in which there is no contact of voting by the voter. So basically, the argument is, the program activities are the USPS change of address and death from like your local Department of Health. Those are the programs and activities. In the rush Okay, just to put us where you orient us here, you're talking about the merits. You skipped over standing and ripeness and everything. You're talking about the merits now, right? Yes, but I'll quickly get to the standing part. And on the merits, it sounds like you're saying that they only get information about the programs and I'm wondering if that's your argument, why you don't learn information about the programs by finding out the results, which would be the list. Like why isn't it, doesn't it relate to the programs to find out the result of them, which is the actual voter list? No, I guess we only see it as the specific language of the subsection relates to the records related to the program. The programs are the USPS one that I just mentioned and also death information. That's the program. To expand it to basically anything that touches it in some kind of way is just too broad. I mean, the NDRA went through the detail of listing the specific program that complied, which was the USPS program and death, and it specifically says change of address or death or words to that effect, to then say because of this general language of all records relating to programs and activities, that it basically opens it up to anything tangentially related kind of does a disservice to the NDRA getting specific as to the specific programs and activities, as I just went through. So that's how we look at it. How do you get a list, a voter registration list covering the state of Hawaii? We see it as you go to the four registrar jurisdictions, which are the four counties, and you get the list from those registered jurisdictions, because I want to make a point that there seems to be this assumption that the NDRA almost speaks of a state jurisdiction, and the NDRA approximately 20 times refers to registrars or registrar's jurisdictions, and it's basically the counties or municipalities depending on the state. Are they the registration agencies? Yes. Most states don't, or I can't speak for other states, but the way the NDRA recognized that registration was traditionally done by registrar jurisdictions, counties, and so the NDRA doesn't say categorically there's a statewide voter registration list. I believe there's a belief that when we get to the Help America Vote Act, where they said, hey, there should be a state mechanism to help maintain all these disparate lists, but that's not... AI-1 says each state shall maintain for at least two years and shall make available for public inspection. That sounds like a state. Well, that gets into our position, which is that the legislative history for the NDRA recognizes that various duties and responsibilities under the NDRA could be addressed by a local official, and in this case, that would be the county clerk, and also our understanding in reading the NDRA is it makes reference to a chief state election official that is responsible for coordinating. It doesn't say all of a sudden they're in charge of the whole list, and if anything, yet again, if we look at the NDRA and forget about the Help America Vote Act, which made limited changes, it recognizes registrar jurisdictions. The registrars are in charge of registering people, removing people, and so forth. They are the core of the NDRA. The chief election official, as it says, just makes a reference to coordinates. It's like a facilitator, and that's what happened in this case. The chief election officer said, go to the county clerk. He performed his role, and the county clerks are in charge of their respective registrar jurisdictions and can speak to the records related to their programs and activities. You can't just change the NDRA into something totally different because of the Help America Vote Act having a statewide list. I think you're making two merits arguments, right? One is it's fine for us to not do this at the state level and send them to the county, and another is even if they asked the county, they wouldn't have to get the whole list? Well, I think as to that, what would happen would be they could make a request to each of the four counties, and if they're trying to find everything that existed on a specific day, they could perhaps say, I want everything as of today's date in each of the four registrar jurisdictions and try to get them to cooperate and each provide a list dated January 1st at 10 a.m., and that would accomplish what they want apparently, which is all four counties providing their list at the same time to create functionally a statewide list. But is your argument that the county wouldn't have to even give them that because they only need information about the post service and the death and not about the list itself? Well, as to that, I guess the distinction is this, the NVRA arguably no, but we say that's a non-issue because under state law, H.R.S. 1197, anyone with an election or government purpose can request the list. Okay, so does the state acknowledge that this organization has an election or a government purpose? Well, as we noted at the U.S. District Court level, we cannot speak for the counties, but the fact of the matter... In a way, because it all funnels up to the state, so what's your answer to my question? So the answer we gave at the lower court end that I'll give here is that they're arguing that they need the list for purposes of ensuring compliance or monitoring of a federal election law, and at the U.S. District Court level, we said that appears to be an election purpose. Of course, they need to put in writing on the form, this is their election purpose, kind of like how I just said, to ensure compliance with the NVRA. The county clerks may have follow-up questions perhaps to look into the veracity of this statement that is really being used for an election purpose, not going to be used for commercial purposes, you know, and so forth. But on its face, we give it to candidates and campaigns that want to knock on doors and solicit votes. There's nothing, as I stand here, which would cause an organization like them, if they're likewise going to use it for the election purpose of ensuring the compliance with the NVRA and so forth, who are we to say otherwise? I guess I'm confused about your answer to my question earlier. So I'm trying to figure out... We have all the standing and rightness issues that we could talk about, but if we get to the merits, are you asking us just to say you're the state and the state can delegate and so they lose on the merits, period? Or are there other things you think we need to say? I'm kind of confused about why you started with this whole post office business, because that doesn't seem related to delegation. I went there, and I apologize, just to basically say that the foundation apparently in other jurisdictions has certain arguments that they're ready primed to go for. And instead of doing the administrative requirement of submitting an application to the four county clerks, they just wanted to bypass that and say, you're the Office of Elections, give us a list. We don't need to go to the county clerks, you know, and they just wanted to... So do you want us to just say, no, it's fine, they can delegate. So then if we get to the merits that you can delegate, so that means you win, period. Or do we have to say something about whether the list is even obtainable under this statute? I think that it's just a matter of the delegation. It's totally permissible. It's consistent with the NBRA. If the court wants to get to the fundamental question that other circuits have addressed, that's fine, too, and we've put in our briefs our position on that. But we understand the court may just say, wait, you know, you don't have ripeness. It should have been referred to the county clerks. You've got to... So if it were to be remanded or suspended so that the organization could go to the county clerks, my understanding is the state's position, which is contrary, I think, to what Mr. Nixon had laid out, is that this organization's purpose would be sufficient to fall under the election segment of the Hawaii statute. And this is where I understand the hemming and hawing on my part. The way our laws are set up, we recognize the ability of the counties to basically receive the application, make their determination, and I use the caveat of saying, from what I know from what they're saying, it appears to be an election purpose, but I really cannot speak on behalf of the county clerks. So we could be in a situation, we've got four counties at issue here, and they go back and they ask four counties, and two of them say, hey, this organization, it's not for a government purpose, okay? That seems clear. And it's not for an election purpose because they are not a party or something else that might fall under the election. Therefore, you get it from two counties and you don't get it from the other two. As to that, I just want... Then what happens? Is there an administrative review process for a denial from a county? No, there isn't. And I was going to say quickly that 3-177-160 gives a non-exhaustive list of election purposes. And that's why they typically refer to candidates, campaigns, but it doesn't mean that a public interest organization wanting to ensure compliance with an election law wouldn't qualify as an election purpose. You know, and as I stand here, I don't see why it wouldn't be an election purpose, but the county clerks may have a different take on it. They may have follow-up questions to satisfy themselves that what they're proposing is an election purpose. It's not a campaign purpose, but it's referring to an election. Is there a single centralized voter registration list for the state of Hawaii that is maintained by the state? I'll say it this way, that there's a statewide voter registration system, and it's set up to issue specific lists for each of the four counties. As I stand here, I don't know if you can press a button and generate a list that has everyone in the state. If you were to press a button, it would probably say, here are the four counties, all as of this date, 10 a.m. And that's functionally the statewide voter registration list, but... I mean, you are the state, you're representing the state, so I'm just trying to understand. Under, you know, Title 52, there has to be a single centralized voter registration list. There is. And where would I find that? I'd like to look at that today. Where would I find that? We would go and we would talk to our IT people and generate one, which would essentially be the four-county list, all functionally. So, push a button, four counties pop up. All this... I wouldn't need to go to the four counties because I would go to the single centralized voter registration list, right? And that would be a question as to whether or not that provision of the Help America Vote Act, if that fundamentally amended the NVRA, because they're coming here under the NVRA, and as I stated earlier, it's about registrar jurisdictions, programs and activities, and so forth. The NVRA is about counties. Help America Vote Act does not have a similar public disclosure provision or what have you. Obviously... I understand that. So, let's just leave the NVRA aside and go to the Help America Vote Act. If there is such a list and someone asks for it under the Help America Vote Act and not under the NVRA, the state's response is what? Under that, we would probably ask for them to cite some specific provision of the Help America Vote Act, which entitles them to that record. If they did not, we would probably treat that under our state open records law. I was just going to say, why wouldn't that be under an open records law with certain redactions for private information? Yes, and we would go through that process and we would then say consistent, because under the state open records laws, there can be provisions in which it would frustrate a legitimate government function to turn over records. We would probably point out that under state law, there is a recognition of the county clerks being in charge of voter registration and so forth. We would probably say that it would be more appropriate to go to the county clerks because we would otherwise be undermining the structure of our state laws that put the county clerks in charge of voter registration by allowing someone to just bypass all of our state laws to just come to us. Go ahead. If you are somebody asking for this, you kind of feel like you are on the merry-go-round because you went to the state and the state said, well, okay, I get under the HAVA that there is a centralized list and you asked for it. So, you are suggesting that the IT person could basically extract this information because the state has it, correct? Correct. As long as there is a legitimate legal reason to extract it, and like we said under our state open records law, we would have a basis to tell people, you need to go to the county clerks because we cannot frustrate state law by bypassing the county clerks and just giving them... Where under the state equivalent to the freedom of information, the state open records law, would it say that somehow this has to be obtained from the clerks? Where under the state open records law do you kind of revert to that? Under, I believe it is 92 F11 or 13, I apologize, I could get the citation wrong, but there is basically a list of reasons why you don't turn things over such as privacy concerns. Correct. And one of them is the frustrating of a legitimate government function. And so, the position would be that we would be frustrating our state laws regarding registration, which run from HRS 11-11 to about 11-23 and also 11-97, that voter registration is the domain of the county clerks, including registering with removing people and so forth, and they are in charge of voter registration, the list, that we are undermining it by just giving anyone who asked for it the list. We are like a bank and these are safe deposit boxes containing information of the county clerks. We cannot just grab everyone's safe deposit box and just present it to people. People need to go to the holder of those boxes. Sorry for the horrible analogy. The county clerks, and the county clerks consistent with state law, could turn over the information or respond appropriately to the request and so forth. We can't undermine that or frustrate it by just bypassing them essentially. Is it the state's position, though, that if the requests were made to the county with an appropriate purpose, that the whole voter registration list should be given by the county? Yes, and to be clear about that... Okay, so then what was your whole first part of the argument then about the post office? I'm really confused. It sounds like you are saying now that this does let you get a whole list. Under HRS 1197 and the four county clerks, you could go to each of the four county clerks, present a legitimate election purpose, and get a copy of what the statute and the administrative rule indicate would be provided for an election purpose list. It would include the social security numbers or dates of birth, but what's provided to candidates and campaigns. Likewise, anyone else with an election purpose would get... It would give you the voters and their party affiliation and whatever else about when they voted. I'm not sure what's in the list. In our state, we don't have political party affiliation, but name, address, those types of... So you would, when you're talking about the post office and death, you're basically saying those are programs that the state has to try to make sure voter lists are accurate? Yeah, so I was trying to get to that. If they were to say, we don't care about 1197, we're just here about the NVRA. We're looking at 20507I. We have these cases that indicate very broad interpretation of all records related to programs activities. That's everything including the voter registration affidavits. We would say, no, respectfully, we do not interpret the NVRA in that manner. The programs and activities would relate to change of address, which is related to the USPS, what I just talked about, and removal due to death, which would be information from the Department of Health. Those are the only records related to programs and activities. You're just lucky that there's... Your view is their entitlement to the list that they want comes from state law, not federal law?  Okay.  Do you want to talk? We're over time, but the standing and rightness issues in this case are difficult. I think I'd like to ask you some questions about that. Then we'll give you extra time because we're going over with him. What is your position about whether the organization has standing? Let's just start with that. Consistent with our briefing, we don't believe they have standing. It's not like Havens where they have a specific component of their organization that provides direct services to people in Hawaii or anything like that. They're a public interest organization who have certain beliefs about the NVRA and monitoring it. There's nothing unique here that would give them standing. Your opponent's argument was that this is an informational injury, and that informational injury itself counts for standing. The Supreme Court has recognized that, and they don't need to show anything else under Havens because this type of injury is enough, whether you're a person or an organization. When I was looking at TransUnion, and while they were making certain distinctions, they ultimately did believe, at least it was my understanding of it, argued that there still had to be some harm. Now, when the Third Circuit kind of approached this, they tried to draw the distinction between a FOIA, like a general entitlement to records type of law in which if you don't give the records, you're just undermining the very purpose or nature of the law, while the NVRA, as the Third Circuit noted, was essentially about encouraging voter registration and so forth. So there'd have to be some connection or evidence that the way in which the state or the counties were responding was somehow impacting what the NVRA intended, and they haven't really shown that. I do think TransUnion is important here. And from my understanding, TransUnion was distinguishing between different types of injury. They had the traditionally recognized as concrete injury being physical or monetary harm were their primary examples. I don't think either physical or monetary harm has been alleged here. Is that correct? Correct. And they said that there is intangible harms that are historically and traditionally recognized, like defamation and other constitutional harms, like the violation of the freedom of speech, as traditional historically recognized intangible harms. And then we have the informational harm that's alleged here, which I believe is the only intangible harm alleged here. Do you have a position on whether that falls into, I think it's not physical or monetary. Is it historic or traditional, or is it the type of, I think, third category, which the court said Congress can create, essentially, a harm by statute. But then if Congress is going to do that, we're going to essentially require some kind of particularized nexus between the congressionally, statutorily created harm and the purpose of the statute. Was this the harm that Congress intended to prevent? Do you follow me? Yeah, I was going to say. Are we in the sort of second category, where this is a historically and traditionally recognized intangible harm, or are we in the third category of a congressionally created intangible harm? I think I'm wise enough to know that I really can't address it, and I apologize. Okay. Do you think there's standing if you're denied a FOIA request? From my understanding of the case law, yes. And so what is your distinction here? Why do you think that doesn't mean there's standing here also? Because I don't see the provision within the NVRA to have been essentially a FOIA one. It was basically, you know, as part of the overall NVRA of encouraging border registration, and then they would have to show some type of logical consequence of not turning over the records, how it impacted. Well, in FOIA, you don't have to show a logical consequence, right? You just have to show a denial of the request. But in that context, FOIA is all about open records, and that's the purpose of FOIA. So I guess my question is, why do you think that this 8I1 is not an open records type law too? Well, I think the provision that, given that it's within 52 U.S.C. 20507, which is a very long, expansive one about the administration of voter registration, has to be seen within that context. And within that context, it's about the registering, the expansion of the voter registration universe, essentially. So I think it's because of the location of it within 20507, a very expansive statute that goes on for pages, essentially, that talks about voter removal programs and so forth, that I just don't see it in isolation. If FOIA was exactly the same, but it was in the U.S. Code kind of with some other things, it would change the answer on FOIA? I think that if – maybe I missed that there. I mean, it seems like you're saying because this provision that talks about the government has to make available these records, because it's with some other stuff – I mean, I know this is what the Third Circuit says, but I have a lot of trouble understanding it. Because it's written with other things around it, it changes what it means somehow, and whether it's actually about public records. And I just have trouble understanding why that should matter, whether if you label things all under a big Roman numeral or not or something, whether it affects what the provision in question says. Well, I believe it's – I mean, I think it is relevant because it provides context. And the context is a multi-page statute which relates to the administration of voter registration. So that is the context. That's the merits, really. I mean, it seems to me that if what they're saying is here's a statute, we think as an organization we have a right to get this information, and our organization is centered around election integrity, and here's the statute we cite for the basis to get the information, you could say – the court could say, well, I disagree. Maybe we don't see the statute the same way, but that wouldn't undercut standing, would it? I mean, because otherwise you're emerging the standing and the merits, and I recognize sometimes that happens. But this would seem to really cabin the meaning of the statute and in effect deny standing because you disagree with how they view the statute, wouldn't it? I mean, and I apologize if I'm not quite – Well, I think there's probably – Let him answer the question, and then we'll just – you know, why don't you kind of tease it out for us. How does the fact that they want it under this statute, you just have a disagreement as to whether that statute is the right one? I think there's a question from my reading of things as to whether or not Congress on its own can unilaterally create standing in a statute, and that the courts have to consider, you know, how Congress went about it. And in the FOIA context, it's like, okay, Congress created a law which talks about the importance of open records and all that kind of stuff, and if you don't turn over records consistent with it, that is harm because you're not effectuating the purpose of this statute, you know, FOIA. And so that meets Article III standing. While in this context, just because Congress throws in a subsection of a larger statute, something that talks about disclosure, we still have to look at what did Congress create. Congress created this law regarding voter registration, what's the purpose of voter registration to encourage and so forth. Then I think the attitude is that the courts look to whether or not this small provision which relates to the disclosure of certain records, whether or not there's really harm as to what Congress was trying to accomplish for the overall statute. I mean, that's kind of my take on it. I think that you've somewhat touched on what I was trying to get at in TransUnion. I think there is arguably a distinction between informational injuries from the denial of information for statutes like FOIA, where the entire purpose of the statute is to create a right to information. And I believe the court has drawn a distinction between disclosure provisions in service of some other purpose other than the right to information in and by itself, and where they've said there's a disclosure requirement in the context of a statute to serve some other legislative purpose, which is not information for the sake of access to information, but instead I think your argument is this is a disclosure provision in the service of ensuring essentially accuracy of the effectiveness of voter registration programs and so forth, that then there has to be some kind of informational injury in and by itself may not be enough for Article III. If that's your theory, can I ask you, isn't FOIA about making sure the government is functioning properly? I guess I'm not understanding why this, even if this is about getting information about voting to make sure that the voting processes are right, why FOIA isn't just a bigger effort to make sure that the government information is available so people can make sure the government is doing what it's supposed to do. I mean, in terms of FOIA, since I don't have it in front of me, and while I can understand the Court's conclusion as to what FOIA accomplishes, others would just look at FOIA as just a starting point to disclose records. The interpretation of what those records reflect as to the proper functioning in government and so forth is a separate matter, but that FOIA just opens up access to records and the analysis, like the Court just mentioned, is a separate matter. I can't speak as to Congress's findings as to why they created FOIA and so forth, but I believe it was just primarily to open up the records first initially and then the rest is just a matter of interpretation of what you learn from those records. And that's what the Hawaii statute is basically, the cousin or related as all these states' disclosure statutes, correct? Yeah, I mean, generally speaking, without yet again being an expert on the state open records laws, one tries to open up the records of how government works, but with those notable exceptions I mentioned earlier where it factors in frustration of legitimate government functions and so forth. Okay, we've taken you way over your time, so I think we need to give time to the other side. Let's start with five minutes on the clock for rebuttal, but if we need to go over, we will. Thank you. Thank you. May it please the Court. Your question to me earlier, why can't we just go to the counties, was answered by counsel when he answered your question with, I can't speak for the counties. Remember, Hawaii only has four, but California has 58, New York has 62, Texas has 254 counties. If every state delegated the statewide voter, obtaining the statewide voter roll by requiring requesters to go to each of the counties, the NVRA has been nullified. Hawaii may not rewrite the NVRA by imposing Hawaii's own specific request or its own rules with regard to the NVRA. Congress made this decision for you, made it very clear. You may obtain documents in relation to the statewide voter roll, including the culmination of all those list maintenance involving the statewide voter roll. Congress created this Freedom of Information Act. States may not rewrite it. Mi Familia Vota, which counsel didn't address, but that is very specific. Arizona can't rewrite the NVRA for Arizona's position. The law there had to do with the actual voting, though, and this is a stepper move, right? We're talking about information here, so I'm not sure you can use that case to say that nothing ever can be done by states in the realm of the NVRA. The reason why is because there were four points. Now, the Mi Familia Vota had to do with registration and making voting easier, but there's four aspects to the NVRA. The last two are protect the integrity of the electoral process, and the fourth is to ensure accurate and current voter registration rolls are maintained. That is of equal dignity. I think in Mi Familia, the alleged violation by the state went directly to what is protected, whereas you are trying to get information to make sure it's protected. It is one step removed. I don't think it is. I would disagree with you on that. Section 8I of the NVRA says each state is required to maintain these documents for two years. Any person may ask for it, and then provides a private right of action without qualification. That depends on what the documents are. What, in your view, is the relationship between the NVRA and the H? HAVA? Yeah, HAVA. HAVA, the Help America Vote Act. Help America Vote Act. Yes. HAVA was passed after the NVRA, so Congress knew that the NVRA already existed, and HAVA created an obligation for the states to maintain, in a non-discriminatory manner, a single, uniform, official, centralized, interactive, computer, statewide voter registration list. Defined, maintained, and administered at the state level, that contains the name, registration information of every legal registered voter in the state. That's the list. That's the list that we asked for. Right, and so is your, in terms of standing, are you also, I mean, we have kind of sidestepped the whole HAVA situation, focusing on the NVRA. I think the HAVA, I mean, HAVA goes right into the NVRA. Your claim, basically, is that your organization would be entitled, under HAVA, to a statewide centralized list, right? Yes, through the NVRA. Through the NVRA, but only through the NVRA. Right, and so that this list exists, not on a county basis, but on a statewide basis, is a foregone conclusion, and we briefly Let's say that the NVRA is interpreted, not as you say, but basically talking about what are the programs that the state has to ensure accuracy of the list. One of those programs is what we'll call the post office program, another one the death program, and there may be some others. So if the NVRA right to list is really limited to what are those programs, then what would be your claim as to how you would have standing? I would urge the court to read public interest legal facts. We've read all the cases, but my question is, if you didn't have the NVRA's interpretation as you would like it, what would be the basis? Do you have another basis for obtaining the lists? The NVRA is very clear. No, no, no, you're not hearing my question. I'm not, and I'm sorry. You're not, and let me just, maybe I'm not clear. Let's assume your interpretation is not correct and that the NVRA provision on the programs is really limited to the programs that the state has enacted or adopted to make sure that the lists are accurate. If that were the case, and so you couldn't really get a claim under 8 i1, do you have another basis for obtaining the lists? No, our basis is under the NVRA.  It's under the NVRA. I understand your reasons, and we've kind of gone over your interpretation, so I understand all that. I was just asking you different questions. Thank you. Did I answer your question, or did I? No, no, you did. You did. Thank you. Okay, good. I think Judge Sung had a different question. Yeah, I'm not, I mean, I think part of it is I want to go back to TransUnion where the Supreme Court told us that the question of whether there is Article III injury is different from the question of whether Congress created a statutory mandate or prohibition and created a private cause of action to enforce it. And even where those two things have happened, there needs to be particularized injury to the plaintiff. So even assuming that Congress created an obligation on the state to create a statewide voter list under HAVA, and even assuming that there is an entitlement to it through the NVRA, I suppose what you're trying to do is enforce the HAVA requirement on the state, assuming there's a private right of action for that. What is the injury, Article III injury, that satisfies TransUnion, in particular to your organization? Yes. We pled in Paragraph 3 our organizational standing and why this document is important to our organization. And we particularized our injuries in Paragraphs 55 through 63 in our complaint. So we pled them. So in a motion to dismiss stage, where we are now, is that the court should take those elements as being true and should look at that. Now, I'm going to tell you I don't believe that's necessary. We pled those because we're careful lawyers. But we don't believe there's necessary, even under TransUnion, because I will tell you, TransUnion, Justice Kavanaugh wrote, the plaintiffs did not allege they failed to receive any information. They argued that they received it in the wrong format. Remember, there were about 2,000 plaintiffs who they said did have downstream damages. So we're only talking about the 3,000, the 6,000. Now, TransUnion didn't involve a public information statute. This is a credit file statute, and I don't have the access to ask for anybody else's credit but my own. And so he said, therefore, they only argued that they received it in the wrong format. Therefore, Aikens and Public Citizen don't control here because they're not Public Request. Then Justice Kavanaugh goes on to write, in addition, those cases involve the denial of information subject to disclosure or sunshine laws that entitle all members of the public certain information. This case does not involve such a public disclosure law. That's TransUnion. It didn't involve a public disclosure law. The NVRA is a sunshine law. It is a public disclosure law. And Aikens and Public Citizen, I would urge, control here where the court and public citizen, anyone who requests specific information that has been denied has standing to bring an action. The requester circumstances don't matter. And that's where the Third Circuit disagreed with you, right? The Third Circuit did, and so did the Fifth. So you didn't ask us about the Fifth. The Fifth was a case involving, and the Third Circuit followed the Fifth. So the Fifth Circuit with Campaign Legal Center, the ACLU, the Mexican-American Legal Defense, MALDEF, and a few others were asking for Texas voter rolls to see if people were being taken off the voter rolls improperly. The Fifth Circuit followed the dissent in Aikens, not the majority, and the Fifth Circuit required downstream consequences. I think it is a misreading of TransUnion to say that all informational injuries require downstream or organizational injuries. The problem with the Third and the Fifth is that it affects, and this is why I said this case is so important, because it affects who has standing, if anyone, because if every person who asks for public information documents, the state gets to come back and do exactly what Hawaii is doing in this case and ask why do you need it, I don't think you do. And so that's a serious problem. I think the Fifth Circuit got it wrong. So I understand the Third Circuit to have done something kind of additional, which I think is what your opposing counsel was focused on, which was to say this NVRA is not really predominantly an information statute. It's predominantly about voting, and there's just a little bit of information buried within it, so we don't call it a sunshine law. In contrast to FOIA, that's entirely a sunshine law. So what is your response to that? NVRA is a sunshine law. Has to be. I mean, there is a specific private right of action that says any aggrieved person, any person can ask for it, any person who doesn't get it gets a private right of action in federal court. And so your answer is basically that language is true whether it's surrounded by other things or not. That's correct. And it makes it like FOIA whether it's surrounded by other things or not. That's correct. And so the Third Circuit is saying that we have to say because it's surrounded by other things it's not predominantly sunshine. You just think that's wrong. I do think that's wrong. I do think the Third and the Fifth Circuit are mistaken. There are lots of organizations like mine that ask for public documents to do sunshine work, that help government, that help disclosure because these are records that belong to the people. The people have a right to have access to them to make sure that they're correct. There is a difference between FOIA, which says all essentially creates this entitlement to public records generally, and the substantive disclosure provision within the MVRA that you're relying on, which by its own terms says for these particular programs to ensure that they're working you can get this information in the context of a broader statutory scheme about voter registration and ensuring access to the right to vote. I think there is at least a legitimate argument adopted by the Third Circuit that that disclosure provision wasn't a general sunshine law but instead a disclosure provision in service of the larger purpose or at least in the stated purpose of the provision itself, which was to ensure the efficacy of these particular types of programs. You can't judge the efficacy of the other programs unless you have the final product. But that is fine, but then that is still not necessarily entitling anyone to the entire statewide voter list. It seems to me there would have to be some nexus between the stated purpose, which is ensuring the efficacy of particular programs and the information that you're requesting. I would urge the court to follow your sister court in the First Circuit in Bellows. They addressed this question specifically. Maine made the same argument and they said no. The statewide voter file is subject to public disclosure under the NVRA. Well, I note that neither party cited a D.C. Circuit case, which came before TransUnion, but which basically recognized that there's a category of standing, informational standing, which is separate from pure organizational standing. So as I hear your argument, really that's what you're saying, is that there is informational standing here and that's enough, and then we get to the merits. Is that right? Yes. Judge McCown, you may be the first to have juxtaposed informational and procedural standing in a wilderness society. So that's exactly right. We're on the informational right side, and that's why I said this is a right-to-know statute. The NVRA doesn't require that you show any need to know. It is a sunshine law. It gives litigants, it gives people a right to the information, and it gives us specifically, Congress decided this for you and gave us a private right of action. Okay. I think we've taken both sides way over now, so thank you both sides for the helpful arguments.  I would urge the court to reverse the trial court, send it back for consideration consistent with this court's order. Yes. Okay. We will take a five-minute break before we hear the last case. Thank you both sides for the helpful arguments in this case. This case is submitted, and we'll take a five-minute break, and then we'll hear the final case. Thank you very much. Thank you.
judges: McKEOWN, FRIEDLAND, SUNG